## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-CR-0008-GKF |
| | ) | |
| JEREMY DANIEL CHAFIN, | ) | |
| *a/k/a "Jeremy David Johnston,"* | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION AND ORDER</u>

This matter comes before the court on the Motion to Reconsider [Doc. 43] of defendant Jeremy Daniel Chafin.   For the reasons set forth below, the motion is denied.

### Background

On June 10, 2022, Mr. Chafin encountered Wyandotte Nation Tribal Police Department Patrol Officer Tony Daniel Morris and Detective Tracy Reynolds.   As a result of the encounter, Mr. Chafin was arrested for Possession of a Firearm by a Convicted Felon.

On January 3, 2024, a grand jury returned an Indictment charging Mr. Chafin with one count of Felon in Possession of a Firearm pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   [Doc. 2].

In advance of trial, Mr. Chafin filed a motion to suppress all evidence obtained during the June 10, 2022 encounter.   [Doc. 20].   On May 8, 2024, the court held an evidentiary hearing on the motion.   [Doc. 29; Doc. 42].   On May 21, 2024, the court issued a written Order granting the motion to suppress ("Suppression Order").   [Doc. 41].

The government now asks the court to reconsider its Suppression Order.   [Doc. 43].   Mr. Chafin filed a written response in opposition [Doc. 44], and the court heard argument on the motion

during the June 5, 2024 pretrial conference.   [Doc. 46].

## Standard

"Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them."   *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).   The Tenth Circuit has stated that "[a] motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law."   *Christy*, 739 F.3d at 539 (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).   Specific grounds include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."   *Christy,* 739 F.3d at 539.   However, a motion to reconsider is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."   *Servants of Paraclete*, 204 F.3d at 1012.

## Evidence Considered

As an initial matter, the court notes that, in its motion, the government asks the court to consider the Wyandotte Tribal Municipal Police Department Incident Report related to the encounter.   Although the government identified the Incident Report as an exhibit in advance of the May 8 evidentiary hearing, the government did not seek its admission during the hearing. [Doc. 29].   Nor did the government seek leave to supplement the record after the hearing.

The Incident Report was known to the government in advance of the May 8 hearing and therefore is not "new evidence previously unavailable."   *See Christy*, 739 F.3d at 539.   The government cites no case law for the proposition that, in service of a motion to reconsider, the court may reopen evidence to admit previously available evidence.   Rather, the Tenth Circuit has recognized that "[a]bsent extraordinary circumstances, . . . the basis for the second motion must

not have been available at the time the first motion was filed." *United States v. Amado*, 841 F.3d 867, 871-72 (10th Cir. 2016) (quoting *Servants of Paraclete*, 204 F.3d at 1012).

Further, the Incident Report is not entirely consistent with the testimony presented during May 8 evidentiary hearing. Belated consideration of the Incident Report, outside of the evidentiary hearing, would preclude Mr. Chafin from adequately addressing these inconsistencies through cross-examination of Officer Morris and Detective Reynolds. Further, the government offers no explanation for failing to present the evidence during the May 8 hearing. *See United States v. Espinoza,* 211 F. App'x 795, 799 (10th Cir. 2007).

Under the circumstances, the court declines to consider the Wyandotte Tribal Municipal Police Department Incident Report, which was attached as Exhibit 2 to the government's motion to reconsider. *See United States v. Conner,* 699 F.3d 1225, 1228 (10th Cir. 2012) (quoting *United States v. Brewer*, 947 F.2d 404, 409 (9th Cir. 1991)) ("What must be meant [by principle suppression hearings are not constrained by some of the rules of evidence], is that the traditional exclusionary rules do not apply, but that procedural regulation of the process of admission and exclusion remains applicable."). Thus, to determine the motion to reconsider, the court limits itself to the testimony presented during the May 8 evidentiary hearing, as well as defense Exhibits 1, 3, 5, 6, and 7. *See* [Doc. 32; Doc. 33]. Because the court does not consider any new material, the court incorporates the "Relevant Facts" portion of the May 21, 2024 Order by reference. [Doc. 41, pp. 1-3].

## Analysis

During the May 8, 2024 evidentiary hearing, the government conceded that the encounter became an investigative detention when Officer Morris saw the black, metal object in Mr. Chafin's right pocket. [Doc. 42, pp. 53, 55, and 57]. Further, during the hearing and in its written

response to the motion to suppress, the government identified only Mr. Chafin being the source of the gun shots as the potential criminal activity.   [Doc. 26, p. 7; Doc. 42, p. 53].

Based on the arguments presented, the court considered only whether reasonable suspicion existed at the point that the government conceded the encounter escalated from consensual to an investigative stop.   *See* [Doc. 41, pp. 4-5].   The court concluded that the government had not shown that reasonable suspicion existed that Mr. Chafin was engaged in *criminal* activity by discharging the gun.   [Doc. 41, pp. 5-8].   Further, the court concluded that Mr. Chafin did not voluntarily consent to the seizure of the firearm and that the plain view doctrine was inapplicable. [Doc. 41, pp. 8-11].   Thus, the court granted the motion to suppress.

The government now asks that court to reconsider the Suppression Order.   The court first considers whether the nature of the encounter warrants reconsideration.

A.    *Nature of the Encounter*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S. Const. amend. IV. "The Supreme Court has identified three types of police/citizen encounters:   consensual encounters, investigative stops, and arrests."   *Oliver v. Woods,* 209 F.3d 1179, 1186 (10th Cir. 2000).   "Consensual encounters are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing."   *Id.*   On the other hand, "[a]n investigative detention, which is also referred to as a Terry stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause."   *Id.* Rather, "[a]n officer may constitutionally 'stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.'"   *United States v. Briggs*, 720

F.3d 1281, 1284-85 (10th Cir. 2013) (quoting *United States v. Neff*, 681 F.3d 1134, 1137-38 (10th Cir. 2012)).   The "categories are not static and may escalate from one to another."   *United States v. Jones*, 701 F.3d 1300, 1312 (10th Cir. 2012) (quoting *United States v. White*, 584 F.3d 935, 945 (10th Cir. 2009)).

The government contends that, until Officer Morris saw the metal object in Mr. Chafin's pocket, the encounter was consensual. [1]   Mr. Chafin argues that the encounter began as an investigatory detention.

To determine whether an encounter is consensual, the court "must 'consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'"   *United States v. Woody*, 45 F.4th 1166, 1173 (10th Cir. 2022) (quoting *Florida v. Bostick,* 501 U.S. 429 (1991)).   "The critical inquiry is whether the police conduct would have communicated to a reasonable person that []he was not at liberty to ignore the police presence and go about [his] business."   *Jones*, 701 F.3d at 1313.

The Tenth Circuit has developed a nonexhaustive list of factors for courts to consider to determine whether a person would have felt free to terminate the encounter:

> (1) the threatening presence of several officers; (2) the brandishing of a weapon by an officer; (3) physical touching by an officer; (4) aggressive language or tone of voice by an officer indicating compliance is compulsory; (5) prolonged retention of an individual's personal effects; (6) a request to accompany an officer to the police station; (7) interaction in a small, enclosed, or non-public place; and (8) absence of other members of the public.

---

[1] In the written motion to reconsider, the government argued that the encounter did not become an investigative detention until after the seizure of the firearm.   [Doc. 43, p. 7 ("When officers confiscated the pieces of Chafin's gun, the encounter became an investigative detention for Fourth Amendment purposes.")].   However, during the June 5 pretrial conference, the government again took the position that the investigative detention began at the point that Officer Morris saw the metal object in Mr. Chafin's pocket.

*Jones,* 701 F.3d at 1313*; see also Woody,* 45 F.4th at 1174.   The court may also consider "whether an officer indicated to the person that he is free to leave."   *Jones,* 701 F.3d at 1313*; see also Woody,* 45 F.4th at 1174 (articulating "whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent" as one of seven relevant factors).   "[N]o single factor is dispositive."   *Jones,* 701 F.3d at 1313.   However, "the 'strong presence of two or three factors' may be sufficient to support the conclusion a seizure occurred." *United States v. Hernandez,* 847 F.3d 1257, 1264 (10th Cir. 2017) (quoting *United States v. Lopez,* 443 F.3d 1280, 1283 (10th Cir. 2006)).

A few of the factors suggest that the encounter began consensually.   Neither Officer Morris nor Detective Reynolds brandished their weapons.   The officers did not physically touch or restrain Mr. Chafin.   None of Mr. Chafin's personal effects were retained prior to the relevant seizure.   However, the strong presence of other factors indicates that the encounter began as an investigatory detention.

*First,* officers did not advise Mr. Chafin that he was free to go or that he did not have to speak with Officer Morris.   *See United States v. Little*, 60 F.3d 708, 713 (10th Cir. 1995). Although there is no *per se* rule requiring officers to advise suspects of their right to refuse to answer questions or that they are free to leave, "the omission of such advisements is . . . relevant, while not dispositive."   *Little,* 60 F.3d at 713; *see also Jones*, 701 F.3d at 1313.

*Second*, Officer Morris initiated the encounter with an accusatory question—"where's the .22?"—followed immediately thereafter by requesting to search Mr. Chafin.   "'Accusatory, persistent, and intrusive' questioning can turn an otherwise voluntary encounter into a coercive one."   *Little*, 60 F.3d at 712; *see also United States v. Williams*, 356 F.3d 1268, 1274 (10th Cir. 2004) ("It is undoubtedly true that a consensual encounter between a citizen and police can be

transformed into a seizure through persistent and accusatory questioning by police."). "[T]he mere fact that officers ask incriminating questions is not relevant to the totality-of-the-circumstances inquiry—what matters instead is 'the manner' in which such questions were posed." *United States v. Ringold,* 335 F.3d 1168, 1173 (10th Cir. 2003). That is, the relevant inquiry is whether officers "convey a message that compliance with their requests is required." *Little*, 60 F.3d at 712 (quoting *Florida v. Bostick,* 501 U.S. 429, 437 (1991)); *see also Ringold*, 335 F.3d at 1174.

Officer Morris's initiation of the encounter was accusatory, persistent, and intrusive. In fact, it is clear that the communications between Officer Morris and Mr. Chafin consisted *only of* accusatory, persistent, and intrusive statements and questions.

At the outset of the encounter, Officer Morris did not identify himself or ask Mr. Chafin for identification. He did not explain his presence. *Cf. Jones,* 701 F.3d at 1305-06, 1314. Instead, Officer Morris immediately asked Mr. Chafin, "where's the .22," then, upon Mr. Chafin's response that he did not have a .22, Officer Morris asked if he could search him. The quick succession of Mr. Chafin's negative response to Officer Morris's question, "where's the .22," and Officer Morris's request to search Mr. Chafin would imply to any reasonable person that Officer Morris did not believe Mr. Chafin was telling the truth, further heightening the accusatory nature of the encounter. *See generally United States v. Gaines*, 918 F.3d 793, 798 n.8 (10th Cir. 2019) (quoting *United States v. Smith,* 794 F.3d 681, 686 (7th Cir. 2015)) ("The line between a consensual conversation and a seizure is crossed when police convey to an individual that he or she is suspected of a crime."). And, moments later, Officer Morris looked into Mr. Chafin's pockets and questioned Mr. Chafin regarding what he saw. Moreover, having witnessed his testimony during the May 8 evidentiary hearing, Officer Morris's general tone and demeanor is

authoritative.[2]   Under these circumstances, the manner of the questions posed "convey[ed] a message that compliance with the[] requests [was] required."   *Little*, 60 F.3d at 712.

*Third,* Mr. Chafin was confronted by two, uniformed police office officers in an isolated area where there were no other members of the public.   The Tenth Circuit "view[s] police-citizen interactions in nonpublic places and police-citizen interactions in the absence of other members of the public similarly."   *Hernandez*, 847 F.3d at 1265.   The absence of other members of the public "point[s] toward a nonconsensual encounter."   *United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005); *see also Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) ("[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.").

*Fourth,* Officer Morris walked toward Mr. Chafin as Mr. Chafin was traveling toward his residence, effectively impeding Mr. Chafin's path to his home.   *Cf. Ringold*, 335 F.3d at 1173.

Here, outside of the presence of other members of the public, Mr. Chafin was confronted by two uniformed officers in such a way as to impede the path to his home.   He was not told who the officers were, why they were there, or that he was free to leave.   Rather, with no explanation, Officer Morris, an authoritative presence, immediately asked Mr. Chafin an accusatory question. The encounter continued in accord, consisting solely of a series of intrusive or accusatory questions, without Officer Morris ever advising Mr. Chafin that he did not have to respond. Under the totality of the circumstances, a reasonable person would not have felt "free to decline the officers' requests or otherwise terminate the encounter."   *Bostick*, 501 U.S. at 439.   Thus, the

---

[2]  The court previously found that Officer Morris's tone of voice was not loud or threatening, [Doc. 41, p. 3], and the court does not alter that conclusion.   However, this does not preclude a finding that Officer Morris was authoritative or commanding.   Any suggestion Officer Morris was not commanding in tone lacks credibility given the court's observation of his demeanor during the May 8 evidentiary hearing.

entirety of the encounter constitutes a "seizure" under the Fourth Amendment.

With respect to the government's position that the encounter did not become an investigatory detention until Officer Morris saw the metal object in Mr. Chafin's pocket, the court notes that "[t]he nature of a police-citizen encounter can change, however, and 'what may begin as a consensual encounter may change to an investigative detention *if the police conduct changes* and vice versa.'" *Hernandez*, 847 F.3d at 1264 (emphasis added) (quoting *United States v. Madden*, 682 F.3d 920, 925 (10th Cir. 2012)).   This is because, as set forth above, "[i]n order to determine whether [an] encounter was consensual, [the court] must 'consider all the circumstances surrounding the encounter to determine whether the *police conduct* would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'"   *Woody*, 45 F.4th at 1173 (quoting *Bostick*, 501 U.S. at 439) (emphasis added).   In taking the position that the encounter did not become an investigatory detention until Officer Morris saw the metal object in Mr. Chafin's pocket, the government points to no evidence that Officer Morris's conduct changed at that moment.   Rather, Officer Morris had posed questions to Mr. Chafin before seeing the metal object and he continued to do so after.   Officer Morris's awareness of a part of the firearm in Mr. Chafin's pocket could bear on the reasonable suspicion analysis, but there is no evidence that the awareness affected or changed Officer Morris's conduct toward Mr. Chafin as required to be relevant to the consensual encounter determination.   Thus, the court concludes that Officer Morris's conduct toward Mr. Chafin was consistently such that a reasonable person would not have felt "free to decline the officers' requests or otherwise terminate the encounter," *Bostick*, 501 U.S. at 439, and Mr. Chafin was seized for the entirety of the stop.   Accordingly, the court must determine whether reconsideration is warranted based on the existence of reasonable suspicion.

B.      *Reasonable Suspicion*

As previously recognized by this court, reasonable suspicion requires "a particularized and objective basis for suspecting the person stopped of criminal activity." *Briggs,* 720 F.3d at 1285 (quoting *Ornelas v United States*, 517 U.S. 690, 696 (1996)).   That is, "[a]n investigatory detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime," *United States v. Daniels*, 101 F.4th 770, 776 (10th Cir. 2024) (quoting *United States v. Madrid,* 713 F.3d 1251, 1256 (10th Cir. 2013)), "or 'that criminal activity may be afoot.'"   *Daniels,* 101 F.4th at 776 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).   "That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence."   *United States v. Dennison*, 410 F.3d 1203, 1207-08 (10th Cir. 2005) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).   Whether a reasonable suspicion of criminal activity exists "depends on the totality of the circumstances in a particular case."   *United States v. Laughrin*, 438 F.3d 1245, 1247 (10th Cir. 2006).   The government bears the burden of proof as to the reasonableness of an officer's suspicion, but reasonable suspicion "is not meant to be[] an onerous standard."   *United States v. Kitchell*, 653 F.3d 1206, 1219 (10th Cir. 2011).

The government argues that reasonable suspicion does not require a particularized suspicion of the commission of a specific crime.   Instead, the government argues that officers had a particularized and objective basis for suspecting Mr. Chafin of *some criminal activity*.

It is true that "[r]easonable suspicion requires only a 'minimal level of objective justification' to support the belief that criminal activity is afoot," which need not necessarily be tied to violation of a specific statute.   *United States v. Guardado*, 699 F.3d 1220, 1224 (10th Cir. 2012) (quoting *Sokolow*, 490 U.S. at 7).   However, while "[r]easonable suspicion might require

only a 'minimal level of objective justification,' . .   it also requires 'specific and articulable facts.'" *United States v. Martinez*, 910 F.3d 1309, 1317 (10th Cir. 2018) (internal citation omitted).   That is, reasonable suspicion requires "in an objective sense, 'something more than an inchoate and unparticularized suspicion or hunch' that Defendant was engaged in criminal activity." *United States v. Rodriguez*, 739 F.3d 481, 486 (10th Cir. 2013).

As discussed above, based on the totality of the circumstances, the June 10, 2022 encounter began as an investigatory stop.   At the time, Officer Morris had heard gun shots from the direction of the wooded area and had seen Mr. Chafin walking over the railroad tracks near the area.

During the June 5, 2024 pretrial conference, the government argued that, upon hearing gunshots of any kind, a reasonable law enforcement officer in Wyandotte, Oklahoma would think criminal activity was afoot.   However, the *specific and articulable facts* available to Officer Morris suggested that the gunshots came from woods located outside of the small town's limits and, for the reasons discussed in the May 21, 2024 Order, simply discharging the weapon in the wooded area does not appear to be criminal. And, while hearing a gunshot may raise the specter of other crimes (like assault), the government directs the court to no "specific and articulable facts" that would suggest such criminal activity was afoot, particularly given that the gunshots originated from an unpopulated, wooded area located outside of the town limits, across East 153 Road and two sets of railroad tracks.   *Martinez*, 910 F.3d at 1317; *Madrid*, 713 F.3d at 1256 ("An investigatory detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime.").   Rather, any suggestion that another crime was occurring amounts to nothing more than an "unparticularized suspicion or hunch."   *See Sokolow*, 490 U.S. at 7.[3]

---

[3] Further, under the circumstances, giving law enforcement *carte blanche* authority based on the sound of gunfire fails to recognize the reality of life in rural Oklahoma where "plinking" is not

And even if reasonable suspicion existed that criminal activity was afoot, at the initiation of the investigatory stop, Officer Morris lacked reasonable suspicion that Mr. Chafin was the person who had fired the gun. *See United States v. Fisher*, 597 F.3d 1156, 1158-59 (10th Cir. 2010) (emphasis added) ("A police officer cannot legally detain a person simply because criminal activity is afoot. *The particular person that is stopped must be suspected of criminal activity*."). At the initiation of the detention, Officer Morris did not see a gun on Mr. Chafin's person nor did he see any bulges that would be indicative of a weapon. Mr. Chafin did not make any furtive movements and his demeanor did not stand out.[4] The *only indication* that Mr. Chafin was engaged in potentially criminal activity was his proximity to the wooded area and, even then, officers did not observe Mr. Chafin in the area until several minutes after the shots. A suspect's "temporal and geographic proximity to the crime alone is not sufficient" to support reasonable suspicion. *Romero v. Story,* 672 F.3d 880, 887 (10th Cir. 2012).

The government also points to Mr. Chafin's initial denial that he had a firearm. However, it is well-established that, "[f]or an investigatory detention to be reasonable it must be 'justified *at its inception*.'" *Madrid,* 713 F.3d at 1256 (emphasis added) (quoting *Terry v. Ohio,* 392 U.S. 1, 20 (1968)). Here, Mr. Chafin did not deny having a gun until after the initiation of the investigatory stop. Further, no "specific and articulable facts" existed suggesting that Mr. Chafin

---

[4] The government also refers to Mr. Chafin being shirtless. Although the Wyandotte Tribal Municipal Police Department report indicates that Mr. Chafin was shirtless, for the reasons discussed above, the court declines to consider the Incident Report to determine this motion. During the evidentiary hearing, the testimony was ambiguous. Regardless, the court is not persuaded that Mr. Chafin not wearing a shirt *in June in Oklahoma* is indicative of criminal activity. *See United States v. Wood,* 106 F.3d 942, 946 (10th Cir. 1997) ("[S]ome facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous.").

uncommon. *See United States v. Hanson*, 534 F.3d 1315, 1317 (10th Cir. 2008) (internal footnote omitted) ("'Plinking'—casual recreational shooting, often at cans and other items found lying around—is a form of target shooting, and many people engage in target shooting for amusement and recreation.").

was in possession of a firearm until Officer Morris saw the object in Mr. Chafin's pocket—well into the detention.  *Daniels*, 101 F.4th at 776.

As a final note, during the June 5 pretrial conference, the government suggested that suppression in this matter would require law enforcement to ignore gun shots.   But that is not so. It is well-established that, in each case, the court must "consider the 'totality of the circumstances—the whole picture.'"   *Daniels*, 101 F.4th at 776 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).   This case presents a unique fact pattern that is unlikely to be repeated.   In the next case, the shots may be fired in Tulsa, rather than rural Oklahoma.   The responding officer may initiate the encounter in a different manner.   The suspect may appear to have a weapon at the outset, or may respond to officers differently, making evasive movements or attempting to flee.   Any number of facts would alter the analysis and nothing herein should be interpreted as suggesting that officers must uniformly ignore the sound of gun shots.

### Conclusion

In its motion, the government seeks to "revisit issues already addressed or advance arguments that could have been raised earlier."   *Christy,* 739 F.3d at 539.   The motion is denied as improper.   Additionally, the government has not shown that the prior Order granting the motion to suppress was clearly erroneous or effected a manifest injustice.  *See id.*   For the reasons discussed above, the court reaffirms its prior conclusion that Mr. Chafin was impermissibly seized without reasonable suspicion in violation of the Fourth Amendment.

WHEREFORE, the Motion to Reconsider [Doc. 43] of plaintiff United States of America is denied.

IT IS SO ORDERED this 12th day of June, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE